UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARVIN PACE,

Plaintiff,

v. Case No. 3:24-cv-1296-MMH-SJH

JOHN LAY,

Defendant.

---

**ORDER**

## I. Status

Plaintiff Marvin Pace, an inmate of the Florida Department of Corrections (FDOC), initiated this case by filing a pro se Civil Rights Complaint under 42 U.S.C. § 1983 (Doc. 1). Pace is proceeding on an Amended Complaint (Doc. 38; Amended Complaint). He sues Dr. John Lay, who Pace describes as the Statewide Medical Director of Centurion of Florida, LLC, in Dr. Lay's individual and official capacities. Amended Complaint at 2. He alleges Dr. Lay's refusal to provide him with a permanent wheelchair violates his rights under the Eighth and Fourteenth Amendments, as well as under Title II of the Americans with Disabilities Act (ADA). Id. at 3. Pace seeks compensatory and punitive damages, as well as injunctive relief. Id. at 14-15.

Before the Court is Dr. Lay's Motion to Dismiss (Doc. 40; Motion).[1] The Court advised Pace that granting a motion to dismiss would be an adjudication of the case that could foreclose subsequent litigation on the matter and gave him an opportunity to respond. See Order (Doc. 14). Pace responded in opposition to the Motion (Doc. 59; Response) with an attachment (Doc. 59-1).[2] The Motion is ripe for review.

## II. Pace's Amended Complaint[3]

Pace alleges that on June 4, 2024, while at Florida State Prison (FSP), he was examined by Dr. Angel Acevedo, who diagnosed him with "severe physical muscle deconditioning," a condition that significantly affects his "major life activit[ies]" and mobility.[4] Amended Complaint at 8. As a result,

[1] Dr. Lay attaches only one exhibit to his Motion: Pace's grievances and responses thereto. (Doc. 40-1).

[2] In a prior Order (Doc. 60), the Court stated that it would also consider, if warranted, Pace's previously stricken exhibits (Doc. 53-1) as part of his Response to Dr. Lay's Motion. For a complete record, the Court includes those exhibits in assessing Pace's claims.

[3] In considering the Motion, the Court must accept all factual allegations in the Amended Complaint as true, consider the allegations in the light most favorable to Pace, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Amended Complaint and may well differ from those that ultimately can be proved.

[4] According to Pace, his FDOC medical records reflect a history of reporting pain in his lower extremities, paraplegia, multiple sclerosis, and being unable to walk or stand. Amended Complaint at 8, 13. Pace also asserts that Dr. Acevedo's "findings [are] substantially consistent" with the findings of other medical specialists who have examined him over the years. Id. He cites to exhibits of medical records and reports

Dr. Acevedo deemed Pace a "qualified disabled individual" and prescribed him a permanent wheelchair pass. Id. 8-9. Pace alleges that, prior to June 4, 2024, Dr. Lay was "given notice on multiple occasions" of his serious medical need for a permanent wheelchair based on prior reports from various treating specialists, but Dr. Lay "disregarded those warnings" and routinely refused to provide him with a permanent wheelchair.[5] Id. By June 4, 2024, his health had deteriorated so much that it was "noticeable" to Dr. Acevedo. Id. As a result of Dr. Lay's refusal to provide him with a permanent wheelchair, Pace has been "virtually denied all daily activit[ies] that are of central importance to [his] living." Id.

Pace further alleges that on or about June 5, 2024, Dr. Lay "personally interfered" with Dr. Acevedo's ordered treatment (a permanent wheelchair pass) and changed it to a "temporary wheelchair pass for distance only outside of [the] cell." Id. at 9-10. He asserts Dr. Acevedo advised him that Dr. Lay's decision to do so was because of past reports that Pace had weaponized his wheelchair. Id. at 10-11. But Pace asserts these reports were falsely created in retaliation for his filing grievances about staff misconduct and that he has

---

that apparently substantiate his ongoing medical issues, but there are no exhibits attached to his Amended Complaint. He does, however, attach numerous medical records and reports to his Response. Doc. 59-1 at 41-81; Doc. 53-1 at 1-10.

[5] Pace appears to allege that Dr. Lay first revoked his permanent wheelchair pass in March 2022. Amended Complaint at 7, 12-13.

never made, nor is he capable of making, a weapon out of his wheelchair. Id. Pace states that Dr. Lay has never witnessed him weaponize his wheelchair and that Dr. Lay improperly relied on reports from vindictive "third party individuals" to deny Pace a permanent wheelchair. Id.

Pace also contends that Dr. Lay's "custom practice of denying [him] [a] wheelchair" is the "moving force" behind his immobility and inability to engage in daily activities. Id. at 11-12. According to Pace, denying him a permanent wheelchair has subjected him to excessive force by corrections officers insofar as his refusal or inability to follow orders to stand/walk leads to forced cell extractions, the use of chemical agents, and being "dragg[ed] . . . across the compound." Id. Dr. Lay's refusal to provide a permanent wheelchair also denies Pace access to medical callouts, therapy and counseling sessions, showers, outside recreation, and "virtually . . . all out of cell activities." Id. at 12-13.

Finally, Pace asserts that Dr. Lay's conduct has caused him injuries, including severe daily pain, abuse by prison staff by way of their use of force, and psychological and emotional pain. Id. He contends that, as of the date of filing this case (December 13, 2024), he was still without a permanent wheelchair for "inside cell activities [and] normal functional needs." Id. As relief, Pace requests that the Court issue an injunction requiring Dr. Lay to provide him with a permanent wheelchair, place him in a "mental health

transitional unit," and provide him with adequate pain management medication and physical therapy. Id. at 14-15. He also seeks compensatory and punitive damages in the amount of 4.5 million dollars and 3.2 million dollars, respectively. Id.

## III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837,

839 (11th Cir. 2011)[6] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 706)).

## IV. Discussion

In his Motion, Dr. Lay argues Pace fails to state a claim upon which relief can be granted with respect to his Eighth and Fourteenth Amendment claims, as well as his ADA claim. Motion at 3-11. Dr. Lay also argues Pace failed to exhaust his administrative remedies and that his requests for injunctive relief and punitive damages must be dismissed. Id. at 11-16.

Pace responds arguing that he states plausible claims under the Eighth and Fourteenth Amendments for deliberate indifference and that he states a plausible claim under Title II of the ADA. Response at 3-20. Pace further argues that he exhausted his administrative remedies and that his requests for punitive damages and injunctive relief should proceed. Id. at 20-30. The Court will address each argument in turn, beginning with the threshold issue of whether Pace exhausted his administrative remedies.

[6] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. Gov't Emps. Ins. Co., 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

**a. Exhaustion**

Dr. Lay asserts the grievance records he has "received" demonstrate that Pace did not properly exhaust his administrative remedies as to each claim prior to bringing this action. Dr. Lay provides a composite exhibit comprising of 126 pages of grievance records (Doc. 40-1) but does not explain why the grievance records show a lack of exhaustion. Motion at 11-14. Pace responds that he exhausted his administrative remedies, and he attaches grievance records to his Response to substantiate his position. Response at 20; Doc. 59-1 at 1-7.

The Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a). Nevertheless, a prisoner is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized "failure to exhaust is an affirmative defense under the PLRA[.]" Id. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant, 530 F.3d at 1374. Not only is there an exhaustion requirement,

"the PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Pozo,[7] 286 F.3d, at 1024. . . .

Woodford, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." Id. As such, the United States Supreme Court has emphasized:

> Courts may not engraft an unwritten "special circumstances" exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are "available."

Ross v. Blake, 136 S.Ct. 1850, 1862 (2016).

The Eleventh Circuit has explained the two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner

[7] Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002).

> lawsuits for failure to exhaust. 541 F.3d at 1082.[8] First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015); see Pavao v. Sims, 679 F. App'x 819, 823-24 (11th Cir. 2017) (per curiam).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. See Fla. Admin. Code r. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance to a designated staff member at the institutional level. See Fla. Admin. Code r. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level.

---

[8] Turner v. Burnside, 541 F.3d 1077 (11th Cir. 2008).

See Fla. Admin. Code r. 33-103.006. If the matter is not resolved at the institutional level, the inmate must file an appeal to the Office of the FDOC Secretary. See Fla. Admin. Code r. 33-103.007.

Under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. See Fla. Admin. Code r. 33-103.005(1); 33-103.006(3). These circumstances include a "grievance of an emergency nature, grievance of reprisal," and a "medical grievance." Fla. Admin. Code r. 33-103.005(1).

Here, accepting Pace's view of the facts as true, the Court finds dismissal of his claims for lack of exhaustion is not warranted at the first step of Turner. Thus, the Court proceeds to the second step of the two-part process in which the Court considers the parties' disputes about exhaustion and makes findings of fact.

As previously noted, Dr. Lay provides numerous grievances Pace submitted between July 2024 and July 2025 but makes no effort to explain how any of these grievances are relevant to whether Pace properly exhausted his administrative remedies. What's more, some of the attached grievances were submitted after Pace initiated this action (December 13, 2024). Dr. Lay does not submit grievance logs or declarations from any FDOC staff members to provide context to any of the grievances filed during the relevant period, which

would be from June 4-5, 2024 (the dates of the alleged incident giving rise to Pace's claims) to December 13, 2024 (the date Pace filed this case).

In any event, in his Response, Pace provides a formal grievance, a grievance appeal, and corresponding responses thereto to substantiate that he properly exhausted his administrative remedies. Doc. 59-1 at 1-7. On June 18, 2024, Pace submitted a formal grievance (log #2406-119-220), wherein he complained that on June 4 and 5, 2024, Dr. Lay violated his rights under the ADA and the Eighth and Fourteenth Amendments by being deliberately indifferent to his serious medical needs, i.e., his disability and need for a wheelchair. Id. at 2-3. Pace stated that he was assessed by Dr. Acevedo on June 4, 2024, and that Dr. Acevedo diagnosed him with "severe physical muscle deconditioning" and ordered a permanent wheelchair pass. Id. Pace also asserted that on June 5, 2024, Dr. Acevedo informed him that Dr. Lay disregarded that order based on past reports, which Pace described as being "fabricated by third parties." Id. Pace explained that denying him a wheelchair was impairing his daily living activities in violation of the ADA, and he sought, among other things, for Dr. Lay to be "removed" from presiding over FDOC healthcare and to be accommodated consistent with the ADA. Id.

On July 1, 2024, officials denied the formal grievance (log #2406-119-220), advising, in pertinent part, as follows:

> YOUR REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL HAS BEEN RECEIVED, REVIEWED, AND EVALUATED.
>
> IN YOUR REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL, YOU GRIEVE MEDICAL.
>
> REVIEW OF YOUR MEDICAL FILE SHOWS THAT YOUR PROFILE CHANGED FROM PERMANENT WHEELCHAIR TO WHEELCHAIR AS NEEDED FOR DISTANCE. AT THIS TIME I CAN FIND NO EVIDENCE TO SUPPORT YOUR ALLEGATIONS OF STAFF MISCONDUCT. IF YOU HAVE ANY OTHER MEDICAL CONCERNS UTILIZE SICK CALL.
>
> BASED ON THE ABOVE INFORMATION, YOUR FORMAL GRIEVANCE IS DENIED.
>
> TO RECEIVE FURTHER ADMINISTRATIVE REVIEW OF YOUR COMPLAINT, YOU MUST OBTAIN FORM DC1-303, REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL, COMPLETE THE FORM, PROVIDING ATTACHMENTS AS REQUIRED, AND SUBMIT THE FORM TO THE BUREAU OF INMATE GRIEVANCE APPEALS, 501 SOUTH CALHOUN STREET, TALLAHASSEE, FLORIDA, 32399 WITHIN THE TIME FRAMES SPECIFIED IN CHAPTER 33-103.

Id. at 4.

On July 16, 2024, Pace submitted a grievance appeal (log #24-6-22637), wherein he raised the same complaints regarding his diagnosis, prescribed treatment, and Dr. Lay's decision to "disregard[ ] those facts." Id. at 5-6. Pace requested that Dr. Lay's decision be reversed and that he be issued a

permanent wheelchair pass. Id. On August 16, 2024, officials denied the grievance appeal (log #24-6-22637), advising, in pertinent part, as follows:

> Appeal Denied:
>
> Your request for administrative remedy was received at this office and it was carefully evaluated. Records available to this office were also reviewed.
>
> It is the responsibility of your health care staff to determine the appropriate treatment regimen for the condition you are experiencing.
>
> It is determined that the response made to you by the Institution on 07/01/2024 appropriately addresses the issues you presented.
>
> Records reviewed indicate that you were seen by the Clinician on 08/02/2024, where you could address your medical concerns at that time.
>
> Please be advised that inmates do not have the right to dictate how medical passes, supplies, and equipment are prescribed.
>
> Should you experience problems, sick call is available so that you may present your concerns to your health care staff.

Id. at 7.

Based on the foregoing, the Court finds that Pace exhausted his administrative remedies as to all his claims prior to initiating this action. Because Dr. Lay has not carried his burden of demonstrating a failure to exhaust, the Motion is due to be denied as to this ground.

**b. Deliberate Indifference**

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to that serious medical need. See Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) ("To establish deliberate indifference, a plaintiff must demonstrate that the prison officials (1) had subjective knowledge of a

risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.") (internal quotations omitted)); see also Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir. 2024). Recently, however, the Eleventh Circuit determined that those standards conflicted with the Supreme Court's decision in Farmer and clarified that courts in this circuit should apply the "subjective recklessness" standard as used in criminal law. See Wade, 106 F.4th at 1253. Specifically, the Eleventh Circuit has instructed that to establish liability on an Eighth Amendment deliberate indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844-45.

Id. at 1262 (enumeration and emphasis omitted);[9] see Stalley v. Cumbie, 124 F.4th 1273, 1283 (11th Cir. 2024) (recognizing that to prevail on a deliberate

[9] The Court notes that the Honorable Adalberto Jordan wrote a concurrence to the majority's opinion in Wade, finding that to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent." Wade, 106 F.4th at 1265 (Jordan, J., concurring).

indifference claim, a plaintiff must show that he suffered "an objectively serious medical need," and that the defendant acted with deliberate indifference to that need, meaning that the defendant "(1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" (internal quotations and citations omitted)).

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. Importantly, medical treatment gives rise to a constitutional violation "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hoffer, 973 F.3d at 1271 (quotations omitted). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). The Eleventh Circuit has also noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical

opinion' does not constitute deliberate indifference." Bismark v. Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

As to Pace's Eighth Amendment deliberate indifference claim against Dr. Lay in his official capacity, the Court notes that when a prison official, like Dr. Lay here, is sued under § 1983 in his official capacity, "the suit is simply another way of pleading an action against the entity to which [a prison official] is an agent." Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991) (internal quotations and citations omitted). Here, Dr. Lay is an employee of Centurion, an entity contracted with the FDOC to provide medical services to state inmates. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) ("Where a function which is traditionally the exclusive prerogative of the state . . . is performed by a private entity, state action is present" for purposes of § 1983 (citations omitted)). Thus, a suit against Dr. Lay in his official capacity is equivalent to suing Centurion itself.

But where a deliberate indifference medical claim is brought against an entity, such as Centurion, based on its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle. This is so because liability for constitutional deprivations under § 1983 cannot stem from the theory of respondeat superior. Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003)); see Denno v. Sch. Bd. of Volusia Cnty., 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, like claims against a county, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

Because Centurion's liability under § 1983 would stem from its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Pace must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged federal constitutional violation. In Monell, the Supreme Court held that local governments can be held liable for constitutional torts caused by

official policies. But this liability is limited to "acts which the [government entity] has officially sanctioned or ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). Under the directives of Monell, a plaintiff also must allege that the constitutional deprivation resulted from "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." Denno, 218 F.3d at 1276 (citations omitted); see Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating Monell "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "distinguish acts of the [government entity] from acts of employees of the [government entity], and thereby make clear that [governmental] liability is limited to action for which the [government entity] is actually responsible." Grech, 335 F.3d at 1329 n.5 (internal quotations and citation omitted). Governmental liability arises under § 1983 only where "'a deliberate

choice to follow a course of action is made from among various alternatives'" by governmental policymakers. City of Canton v. Harris, 489 U.S. 378, 389 (1989) (quoting Pembaur, 475 U.S. at 483-84). A government entity rarely will have an officially adopted policy that permits a particular constitutional violation; therefore, to state a cause of action for damages under § 1983, most plaintiffs must show that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

With respect to Pace's official capacity claim, Dr. Lay argues that, aside from detailing his "own isolated incident," Pace fails to allege other similar instances of indifference giving rise to an unconstitutional policy, custom, or practice on part of the FDOC or Centurion. Motion at 6-8. In response, Pace asserts that because Dr. Lay is the Statewide Medical Director for Centurion, he is the "policy maker" that "dictates" what every medical provider must do or not do; and, Pace asserts, Dr. Lay's order to other medical specialists to not

provide a permanent wheelchair effectively amounts to a Centurion policy. Response at 10-12. According to Pace, Dr. Lay entered a "popup message" in his medical file that appears any time he receives medical care, and the "popup message" states that Pace is not to be issued a permanent wheelchair based on reports of him weaponizing his wheelchair and video evidence of him walking.[10] Id. Additionally, in a footnote, Pace asserts that "this is not a[n] isolated incident" because other disabled, wheelchair-bound inmates "went through the exact same custom." Id. at 12 n.4. Pace notes that there are other disabled inmates who can walk and have also been accused of making weapons out of their wheelchairs, but they have nonetheless been provided a permanent wheelchair. Id. at 15 n.6.

Accepting Pace's allegations as true, Pace has failed to state a claim for deliberate indifference against Dr. Lay in his official capacity. Pace fails to allege a policy, custom, or practice that is the moving force behind his alleged constitutional deprivation. His single statement that Dr. Lay's "custom practice of denying [him] [a] wheelchair" is the "moving force" behind his immobility and inability to engage in daily activities is conclusory and insufficient to state a plausible deliberate indifference claim. Contrary to

[10] Pace disputes the bases for denying him a permanent wheelchair, asserting they are "false, untruthful, and misleading." Response at 11.

Pace's argument, Dr. Lay's "popup message," which apparently directs medical personnel not to issue Pace a permanent wheelchair, does not constitute a widespread policy of Centurion to prohibit issuance of a permanent wheelchair to all disabled inmates; rather, it is a directive that is specific to Pace based on Dr. Lay's concerns regarding Pace's alleged past behaviors (weaponizing his wheelchair and showing signs of malingering). Moreover, Pace's own allegations undermine any claim that Centurion has a policy of refusing to issue disabled inmates a permanent wheelchair—Pace alleges that other disabled inmates, even with similar behavioral concerns, have been provided a permanent wheelchair.

Likewise, Pace's factual allegations relating only to alleged individual failures in his medical care simply cannot sustain a claim that there is either a policy to deny medical care to disabled inmates or a custom or practice of denying adequate medical care, much less that the practice was so widespread that Centurion had notice of violations and made a "conscious choice" to disregard them. Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). Thus, the Court finds that Pace has failed to state an Eighth Amendment deliberate indifference claim against Dr. Lay in his official capacity and, as such, Dr. Lay's Motion is due to be granted as to this claim.

As to Pace's individual capacity claim, Dr. Lay agues Pace fails to allege that he (Dr. Lay) had any personal involvement in Pace's medical care or personally evaluated Pace. Motion at 8-9. Dr. Lay asserts Pace merely contests his decision to revoke the permanent wheelchair pass due to safety concerns. Id. Dr. Lay argues Pace makes no factual allegations to support that he had subjective knowledge of Pace's condition or that his actions amount to subjective recklessness. Id. Pace responds that Dr. Lay was "subjectively aware" of his serious medical need because Dr. Lay reviewed numerous medical reports of other treating specialists, which included descriptions of his underlying health issues and orders to provide a permanent wheelchair. Response at 13-17. Pace also appears to assert that Dr. Lay personally examined and assessed him on May 4, 2021, further supporting an inference of Dr. Lay's subjective knowledge of his serious medical need. Id.

At this stage of the proceeding, where the Court must accept Pace's allegations as true, the Court finds he has sufficiently alleged an Eighth Amendment deliberate indifference claim against Dr. Lay in his individual capacity. As an initial matter, the Court notes that Dr. Lay raises no argument to dispute the first element—that Pace suffered from a medical need that was objectively, sufficiently serious. Even still, Pace alleges that he has been diagnosed with "severe physical muscle deconditioning, which significantly

affects his "major life activit[ies]" and mobility. Amended Complaint at 8. Additionally, Pace alleges that his medical records reflect a history of paraplegia and having multiple sclerosis, among other issues. Id. at 8, 13. Finally, Pace asserts that his condition requires the issuance of a permanent wheelchair, as reflected in Dr. Acevedo's report and other medical records, yet Dr. Lay continues to deny him one. Id. Based on these allegations, the Court finds Pace has sufficiently pled that denying him a permanent wheelchair is a deprivation that is "'objectively, sufficiently serious.'" Wade, 106 F.4th at 1262 (quoting Farmer, 511 U.S. at 834).

Second, the Court must consider whether Pace has alleged that Dr. Lay acted with "subjective recklessness." Id. (internal quotations and citation omitted). "[T]o show that a defendant acted with 'subjective recklessness as used in the criminal law,' Farmer, 511 U.S. at 839, a deliberate-indifference plaintiff must demonstrate that the defendant was actually aware that his own conduct caused a substantial risk of serious harm to the plaintiff." Wade, 106 F.4th at 1261 (internal citation modified). Pace alleges Dr. Lay was subjectively aware of his medical conditions based upon Dr. Lay's receipt and review of several medical reports addressing his health issues and ordering a permanent wheelchair, but Dr. Lay routinely refused to issue a permanent wheelchair pass. According to Pace, Dr. Lay has refused to issue a permanent

wheelchair dating back to March 2022. Pace also alleges that Dr. Lay personally observed him in May 2021, prior to revoking his permanent wheelchair pass, which further supports an inference of Dr. Lay's awareness of Pace's condition and the substantial risk of serious harm that could arise if Pace was without a permanent wheelchair. Although Dr. Lay seemingly asserts that safety concerns dictated his decision to revoke Pace's permanent wheelchair pass, such an argument is better suited for the summary judgment stage.

Finally, Pace's allegations are sufficient to support causation. Pace alleges that his health has significantly deteriorated since his permanent wheelchair was revoked and that Dr. Lay's conduct has caused him severe daily pain, abuse by prison staff, and psychological and emotional pain. Liberally construing Pace's allegations, the Court finds he has sufficiently alleged causation. See Adams v. Todd, No. 23-10908, 2024 WL 4449453, at *4 (11th Cir. Oct. 9, 2024) (concluding a district court erred at the pleading stage by finding the plaintiff failed to allege causation when the plaintiff "expressly said that his severe pain and permanent scarring came from his rectal injury" and "both nurses were in a position to avert that injury" by providing him pain medication, referring him to a doctor, or ordering lab work, but the nurses denied the plaintiff treatment).

Accordingly, Pace states a plausible Eighth Amendment deliberate indifference claim against Dr. Lay in his individual capacity. Thus, Dr. Lay's Motion is due to be denied as to this claim.

**c. ADA**[11]

The ADA prohibits discrimination "against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to any discrimination by any such entity." Id. § 12132.

To state a claim for disability discrimination under Title II of the ADA, "a plaintiff must allege that (1) he is a 'qualified individual with a disability'; (2) 'he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated

[11] In Pace's Amended Complaint, he references only Title II of the ADA. See generally Amended Complaint. In his Response, however, Pace references the Rehabilitation Act (RA), too. Response at 18. While the Court recognizes that Section 504(a) of the RA is "pretty much identical" to Title II of the ADA, Silberman v. Miami Dade Transit, 927 F.3d 1123, 1133 (11th Cir. 2019), and that "the RA uses the same standards as the ADA," Badillo v. Thorpe, 158 F. App'x 208, 214 (11th Cir. 2005), Pace is not permitted to add a new claim to his Amended Complaint by raising it for the first time in a response to a motion to dismiss. See Huls v. Llabona, 437 F. App'x 830, 832 (11th Cir. 2011). To the extent Pace is attempting to do so, the Court denies his improper attempt to amend his complaint and addresses only his properly raised ADA claim herein.

against by the public entity'; and (3) 'the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.'" Kinard v. Fla. Dep't of Corr., No. 24-10359, 2024 WL 4785003, at *5 (11th Cir. Nov. 14, 2024) (quoting Silberman, 927 F.3d at 1134). "A prisoner has a claim for disability discrimination if he is denied, by reason of his disability, participation in an activity provided in a state prison." Id. (citing Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 211-12 (1998)).

Dr. Lay argues Pace's allegations do not state a claim under Title II of the ADA because he merely alleges that he is a disabled individual, and that Dr. Lay failed to provide him with medical care. Motion at 10-11. Dr. Lay also argues Pace makes no allegations that he was denied a benefit or service or was discriminated against because of a disability. Id. In response, Pace contends he sufficiently alleged he was denied benefits and services insofar as he was denied "virtually all out of cell activities," including "showers, medical services, outside specialty clinic services, mental health group therapy services, individual mental health counseling services, [and] outside recreation activities," which imposed a "significant hardship." Response at 18-20. Additionally, Pace asserts he was excluded from or denied the aforementioned services and activities based solely on his physical impairment, i.e., his "disability of not being able to stand up physically and walk" to those services

and activities. Id. Finally, Pace argues he has been denied "access to medical services" due to Dr. Lay's refusal to provide a permanent wheelchair. Id.

As an initial matter, Pace's ADA claim against Dr. Lay in his individual capacity is due to be dismissed. "Only public entities are liable for violations of Title II of the ADA." Ellard v. Cannon, No. 25-11670, 2026 WL 293288, at *2 (11th Cir. Feb. 4, 2026) (quoting Edison v. Douberly, 604 F.3d 1307, 1308 (11th Cir. 2010)) (internal quotations omitted); see Badillo, 158 F. App'x at 211 ("[T]here is no individual capacity liability under Title II of the ADA[.]"); see also 42 U.S.C. § 12132 ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). In his individual capacity, Dr. Lay is not a public entity and thus cannot be held liable under Title II of the ADA. Thus, Dr. Lay's Motion is due to be granted to the extent it seeks dismissal of Pace's individual-capacity ADA claim.

But Pace also alleges an ADA claim against Dr. Lay in his official capacity. Amended Complaint at 2. In construing Pace's Amended Complaint liberally, as the Court must, he raises two theories of disability discrimination under Title II of the ADA: (1) disability discrimination and (2) failure to

accommodate. See Ellard, 2026 WL 293288, at *2; Kinard, 2024 WL 4785003, at *6. Under the first theory, Pace alleges Dr. Lay engaged in disability discrimination because he was a disabled individual and Dr. Lay failed to provide him with adequate medical care despite the existence of numerous medical reports recommending a permanent wheelchair. Under the second theory, Pace alleges Dr. Lay engaged in disability discrimination because Dr. Lay, by refusing to provide a permanent wheelchair, failed to accommodate Pace's disability, which left him unable to access certain programs, services, or activities offered by the prison. See Kinard, 2024 WL 4785003 at *6.

With respect to the first theory, Pace has failed to state a claim for relief. Pace's allegations that Dr. Lay failed to provide medical care to a disabled inmate do not give rise to claims under Title II. Title II of the ADA does not "provide a 'remedy for medical malpractice' and [is] not 'violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.'" Id. (quoting Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1294 (11th Cir. 2005) (en banc)).

However, by his second theory, Pace adequately alleges a failure to accommodate claim under Title II of the ADA. As to the first requirement—that Pace is a qualified individual with a disability—Dr. Lay makes no argument to dispute this requirement. But in any event, Pace's Amended

Complaint contains sufficient allegations to satisfy this first requirement, namely, Dr. Acevedo's diagnosis and ordered treatment, that his medical records reflect a history of paraplegia, multiple sclerosis, and other ailments that cause him to be wheelchair bound, and that numerous medical specialists have prescribed him a permanent wheelchair based on his conditions. Amended Complaint at 8, 13.

In his Amended Complaint, Pace also alleges that Dr. Lay's conduct resulted in a failure to accommodate his disability, which left him without access to the prison's programs, services, and activities. Specifically, Pace asserts that due to his disability and lack of accommodation, he is unable to access medical callouts, therapy and counseling sessions, showers, outside recreation, and "virtually . . . all out of cell activities." Id. at 12-13; see Kinard, 2024 WL 4785003, at *6 (concluding that plaintiff stated claims under Title II of the ADA where he alleged that he was disabled due to an injured foot and that due to his disability and the lack of any accommodation, plaintiff was unable "to participate in recreational activities in the prison yard."). At this stage of the proceedings, where the Court must accept Pace's allegations as true, he has plausibly stated a failure to accommodate claim under Title II of

the ADA against Dr. Lay in his official capacity. As such, Dr. Lay's Motion is due to be denied as to this claim.[12]

**d. Fourteenth Amendment**

Dr. Lay argues Pace's Fourteenth Amendment claim under § 1983 must be dismissed because Pace "was/is a convicted prisoner and not a pretrial detainee" during the time period of the alleged events underlying his claims. Motion at 6. In his Response, Pace appears to assert that his reliance on the Fourteenth Amendment is related to his ADA claim. Response at 9-10 (asserting that ADA protections apply to state prisoners under the Fourteenth Amendment).

While Dr. Lay argues that Pace's reference to the Fourteenth Amendment is improper because claims by a convicted prisoner relating to prison conditions are grounded in the Eighth Amendment, the Eighth Amendment is applicable to the states through the Fourteenth Amendment. See U.S. v. Georgia, 546 U.S. 151, 157 (2006) (noting that the Fourteenth Amendment incorporates the Eighth Amendment against the states); see also Siskos v. Sec'y Dep't of Corr., 817 F. App'x. 760, 766 (11th Cir. 2020) (noting

[12] As the Eleventh Circuit observed in Ellard, the Court's determination here does not prevent Dr. Lay from arguing that "accommodations were not necessary or reasonable, but that is typically done at the summary judgment stage." 2026 WL 293288 at *3 n.5.

that a prisoner sufficiently alleges conduct that "violated the Fourteenth Amendment" if he states "a viable claim under the Eighth Amendment"). Thus, Dr. Lay's specific argument for dismissal of Pace's Fourteenth Amendment claim lacks merit.

Nonetheless, because Pace relies on the same conduct in support of all his claims, his Fourteenth Amendment claim is redundant of the Eighth Amendment claim he asserts. See Lockhart v. Cunningham, No. 5:22-cv-194-KKM-PRL (M.D. Fla. June 21, 2022) (citing Graham v. Connor, 490 U.S. 386, 395 (1989); then citing Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding the Due Process Clause provides no greater protection than does the Eighth Amendment's Cruel and Unusual Punishments clause)). As such, to the extent Pace is raising a substantive due process claim under the Fourteenth Amendment based on Dr. Lay's alleged denial of adequate medical care, such a claim is due to be dismissed as redundant to his surviving Eighth Amendment claim. See Graham, 490 U.S. at 395 (noting that when a constitutional Amendment "provides an explicit textual source of constitutional protection against" a particular type of conduct, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

### e. Punitive Damages and Injunctive Relief

Dr. Lay argues Pace fails to set forth allegations entitling him to punitive damages. Motion at 14-15. Specifically, Dr. Lay asserts Pace "failed to set forth allegations that Defendant's conduct was motivated by evil motive or intent or involved reckless or callous indifference to the federally protected rights of others." Id. (citing Hooks v. Brewer, 818 F. App'x 923, 931 (11th Cir. 2020)).

At this stage of the proceeding, the Court declines to dismiss Pace's request for punitive damages. If Pace can prove that Dr. Lay acted with reckless or callous indifference to his federally protected rights, then Pace may be entitled to punitive damages. See Barnett v. MacArthur, 715 F. App'x 894, 905 (11th Cir. 2017). Thus, the Court will permit Pace the opportunity to develop the record on this issue, and Dr. Lay's Motion will be denied to the extent it seeks dismissal of Pace's request for punitive damages.

With respect to Pace's claim for injunctive relief, Dr. Lay argues that Pace's requests—to require Dr. Lay to provide a permanent wheelchair, to order that Pace be placed in a mental health transitional unit, and to provide Pace with appropriate pain management medication—are "all remote and highly speculative." Motion at 15-16. Dr. Lay also argues that because Pace fails to state a claim for deliberate indifference, Pace necessarily has failed to show a likelihood of success on the merits of that claim; and, even if Pace states

a plausible deliberate indifference claim, doing so is a "far cry from proving (or being likely to prove) such a claim." Id. (quoting Gaffney v. Scibelli, No. 3:22-cv-1213-BJD-MCR, 2023 WL 5003110, at * 3 (M.D. Fla. Aug. 4, 2023)).

This Court has found that Pace has stated plausible claims for relief under the Eighth Amendment and Title II of the ADA. As such, the Court declines to dismiss Pace's request for injunctive relief at this juncture. Of course, Pace will need to be successful on his claims to be entitled to any injunctive relief. See Montanez v. Fla. Dep't of Corr., No. 3:25-cv-939-MMH-LLL, 2026 WL 1067063, at *16 (M.D. Fla April 20, 2026). As such, the Court denies Dr. Lay's Motion as to this contention.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1. Defendant Dr. Lay's Motion to Dismiss (Doc. 40) is **GRANTED in part** and **DENIED in part**. The Motion is **GRANTED** to the extent that Pace's Eighth Amendment deliberate indifference claim against Dr. Lay in his official capacity is **DISMISSED without prejudice**, Pace's ADA claim against Dr. Lay in his individual capacity is **DISMISSED with prejudice**, and Pace's Fourteenth Amendment claim is **DISMISSED without prejudice**. The Motion is otherwise **DENIED**. Thus, the following claims remain in this action: individual-capacity deliberate indifference under the

Eighth Amendment; failure to accommodate under Title II of the ADA; and claims for punitive damages and injunctive relief.

2. Defendant Dr. Lay shall answer the Amended Complaint by **August 31, 2026**.

3. A separate scheduling order will enter.

**DONE AND ORDERED** at Jacksonville, Florida, this 10th day of August, 2026.

MARCIA MORALES HOWARD
United States District Judge

OrlP-2 8/10
c:
Marvin Pace, # B02617
Counsel of Record